E. R. CLOWARD AND VERNA W. CLOWARD, HUS-
BAND AND WIFE, AND G. C. RODGERS AND ERMA
C. RODGERS, HUSBAND AND WIFE, APPELLANTS, *v.*
NICK PAPPAS, VASALIE PAPPAS, ALEX
POULOS, MARGARET POULOS, PAUL PAP-
PAS, AND JUNE PAPPAS, DOING BUSINESS AS
PONY EXPRESS MOTEL, RESPONDENTS.

No. 4634

December 5, 1963                    387 P.2d 97

*Loyal Robert Hibbs,* of Reno, for Appellants.

*Vargas, Dillon & Bartlett* and *Alex. A. Garroway,* of
Reno, for Respondents.

## OPINION

By the Court, THOMPSON, J.:

This litigation arose from the fire of March 14, 1961 which destroyed the Pony Express Motel on South Virginia Street in Reno, Nevada. Mr. and Mrs. Cloward and Mr. and Mrs. Rodgers, invited guests of the motel, joined as plaintiffs in an action against the owners. They sought to recover damages for the loss of personal property left in their rented motel rooms, for the loss of Mr. Cloward's car which was parked in a carport adjoining his room, and for personal injuries and incidental medical expenses incurred by each. As to the chattels which were "left in their rooms" the plaintiffs charge the owners with gross negligence. NRS 651.010.[1] The claim of Mr. Cloward for the loss of his car is based on a common law concept that an innkeeper is liable as an insurer for the loss of his guests' personal property from fire. For the personal injury claims and kindred expenses a third standard for recovery is urged—that the owners breached their duty of ordinary care to invitees. Worth v. Reed, 79 Nev. 351, 384 P.2d 1017; Gunlock v. New Frontier Hotel, 78 Nev. 182, 370 P.2d 682.

The case was presented to the court without a jury. Only the issue of liability was tried. If liability was found, then the claims for damages were to be litigated

---

[1]"651.010. *Civil liability of innkeepers limited.* No owner or keeper of any hotel, inn, motel, motor court, or boardinghouse or lodginghouse in this state shall be civilly liable after July 1, 1953, for the loss of any property left in the room of any guest of any such establishment by reason of theft, burglary, fire or otherwise, in the absence of gross neglect upon the part of such keeper or owner."

later. NRCP 42(b). The court found that the owners were not liable to the plaintiffs. We are asked to review this ruling.

The Pony Express Motel was composed of two strings of units separated by an inner courtyard. One string ran along the southern boundary of its property, and the other along the northern boundary. The office was to the east and adjoined the manager's living quarters. Extending west from the office and the manager's unit was the southerly series of motel rooms. They adjoined each other in pairs, each pair being separated by double carports. There were oil burning, forced air furnaces in the rear of the carports for units 3 and 10. Mr. and Mrs. Cloward occupied unit 6, and Mr. and Mrs. Rodgers unit 7 of the southerly series of units. The Cloward car was in the carport adjoining his motel room.

The fire probably started near 10 p.m. The exact time of its inception is not known. The point of origin was believed to be the furnace room adjacent to unit 3. The sole evidence as to the cause of the conflagration was the opinion offered by an investigator of the Reno Fire Department. He believed that a strong wind caused a downdraft in the flue, forcing the fire out of the furnace firebox and igniting nearby material. He supposed that, but for the strong wind, the fire would not have occurred. One or two days before, the furnace had been repaired. Whether it was in good working order on the day of the fire was a controverted issue of fact which the court resolved in favor of the owners.

A guest in unit 3 notified the motel manager of the fire, who, in turn, telephoned the fire department. After doing so, the manager and her husband gathered a few personal belongings (the dog, a bird cage, some medicines, etc.), got into their car, and left. She was concerned for her husband's welfare as he was afflicted with a heart disease. The first fire unit was on the scene by 10:21 p.m. (within 4 minutes after receiving notice) and radioed for additional help. The motel manager did not notify any of the motel guests that a fire was in progress.

Her husband had requested an unknown volunteer to do so. The record is silent as to what, if anything, the unknown helper did. None of the plaintiffs was notified. They learned of the fire themselves and evacuated in haste, leaving behind the chattels for which they now seek a recovery in money damages. We do not know whether a prompt warning by the motel manager would have enabled the plaintiffs to avoid damage, nor indeed whether a warning could have been given under the circumstances. Both the time available to warn the motel guests, and the speed with which the fire spread from unit to unit is not made clear. Reasonable, but opposing, inferences could be drawn from the evidence introduced. From these facts and from the inferences to be drawn therefrom, the trial judge concluded: "There was no negligence on the part of defendants or their agent which caused the fire, and there was no negligence by defendants or their agent which caused damage to or loss of the property of plaintiffs or bodily injury to them. Mrs. Taylor (the manager) and her husband acted as reasonably prudent persons under all the circumstances. There was no credible evidence as to time of the fire, its spread or the acquisition of knowledge of its existence. A determination in favor of the defendants necessarily results." It seems to us that each of the trial court's conclusions could properly be made from the facts as we have related them. The issues of negligence and proximate cause were fact issues about which reasonable minds could differ. Therefore we affirm the judgment denying plaintiffs a recovery for their personal injuries and related expenses, as their claims were premised upon the charge of ordinary negligence. We must also affirm the judgment denying plaintiffs relief for the loss of property left in their motel rooms, for if the defendants were not negligent, a fortiori, they were not grossly negligent so as to impose a liability under NRS 651.010.

There remains for determination the issue posed by the claim of Mr. Cloward for the loss of his car which was parked in the carport adjoining his motel room. As

to this claim it is urged that the motel owners have the liability of an insurer. The trial court did not deal specially with this proposition. We must assume from the conclusions made by that court (hereinbefore quoted) that a liability for the property of guests not left in their rooms would exist only if the owners were found to be negligent. That court apparently rejected the so-called common law insurer's liability rule. We must decide whether it was correct in doing so.

NRS 1.030 provides that the common law is the rule of decision in Nevada unless repugnant to or in conflict with the laws or constitution of this State or of the United States. What was the common law rule which the plaintiffs ask us to apply? In general terms it is that an innkeeper is practically an insurer of the safety of property entrusted to his care by a guest and, in the event of loss, he may exonerate himself from liability only by showing that such loss or injury resulted from an act of God, or of the public enemy, or from the fault of the guest himself. The cases regarding this rule are collected in the annotations, 63 A.L.R.2d 495 and 156 A.L.R. 233. See also a comment in 15 Albany Law Review 236. We do not think that this rule has application to the case before us. Mr. Cloward's car was not entrusted to the care of the motel operator. The possession and control of the car remained with Mr. Cloward. He kept the keys. Sewell v. Mountain View Hotel, Inc., 45 Tenn.App. 604, 325 S.W.2d 626. Nor was there a bailment of the car. Cf. Gaudin Motor Co. v. Wodarek, 76 Nev. 415, 356 P.2d 638; Manhattan Ins. Co. v. Central Garage, 54 Nev. 147, 9 P.2d 682.[2] The lower court did not err in failing to apply the common law insurer's liability rule.

Affirmed.

BADT, C. J., and MCNAMEE, J., concur.

---

[2]Had the car been entrusted to the custody and control of the innkeeper, an interesting problem would have been presented: Would the common law insurer's liability rule apply, the rule governing the liability of a bailee for hire, or some other concept? We intimate no answer.